UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE SHANNON,

    Plaintiff,

v

MARADA INDUSTRIES, INC,
d/b/a COSMA BODY ASSEMBLY
MICHIGAN,

    Defendant.

Civil Action No.:
Honorable

---

JAMES B. RASOR  (P 43476)
ANDREW J. LAURILA  (P 78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax

_____

## COMPLAINT & JURY DEMAND

NOW COMES PLAINTIFF, JIMMIE SHANNON, by and through his attorneys, Rasor Law Firm, PLLC, and for his Complaint against Defendant Cosma Body Assembly Michigan states as follows:

## GENERAL ALLEGATIONS

### Parties

1. At all relevant times, Plaintiff Jimmie Shannon, was a resident of the City of Detroit, County of Wayne, State of Michigan.

2. Defendant Marada Industries, Inc., d/b/a Cosma Body Assembly (hereinafter "Cosma"), is a domestic profit corporation. Cosma operates a facility and conducts business at issue here in the City of New Hudson, County of Oakland, State of Michigan.

3. At all material times, Plaintiff was an employee of Defendant.

4. This lawsuit arises out of events occurring within the City of New Hudson, County of Oakland, and State of Michigan.

## Jurisdiction and Venue

5. This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to the Americans with Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

6. This Court has jurisdiction over the claims arising under federal law pursuant to 28 U.S.C. §§ 1331, 1343. This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

7. Defendant Cosma is a covered entity, which includes "employer[s]" within the meaning of the ADA and an "employer" within the meaning of the PWDCRA, MCL §37.1201(b).

8. The amount in controversy exceeds $75,000.00 exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

9. Venue is appropriate in this Court pursuant to 28 USC §1391(b), as this cause of action arises out of occurrences that took place within this District in the County of Oakland and Defendant transacts and conducts business within this District.

## Administrative Procedures

10. Plaintiff filed a charge with the EEOC based on disability on November 15, 2018.

11. The EEOC determined there was cause that the ADA was violated, but subsequently gave Plaintiff a Right to Sue letter on August 21, 2020.

12. Plaintiff has satisfied all jurisdictional requirements set forth by the EEOC for bringing federal causes of action as addressed below.

## COMMON FACTUAL ALLEGATIONS

13. Plaintiff was hired by Defendant Cosma as a Machine Operator on or around September 9, 2018.

14. Plaintiff, who has an amputated left arm from his elbow down, was hired by Defendant knowing that he had these physical limitations and restrictions.

15. Upon Plaintiff's hire, he worked at two different machines, both of which he performed well and did not need any assistance despite his physical limitations.

16. However, sometime in October Plaintiff had a new supervisor, and he was transferred to a different machine, a "Door Machine."

17. Due to Plaintiff's physical limitations, this new assignment was more difficult for Plaintiff to perform in a timely fashion.

18. Upon beginning this new assignment, Plaintiff sought assistance from his supervisor because he was constantly falling behind due to his physical limitations, and/or alternatively, inquired about moving back to the other two positions he had performed well with no issues.

19. Defendant's Assistant Production Manager, Schon Bradley, initially told Plaintiff not to worry about it and that they would figure it out.

20. Despite Plaintiff's repeated complaints about being unable to keep up at the door machine assignment, Defendant did not attempt to accommodate his disability.

21. Instead, Plaintiff was terminated approximately one week later when Assistant Production Manager Bradley requested Plaintiff's assignment end because he could not keep up.

22. Upon information and belief, although it was reasonable for Plaintiff to be assigned to the two prior positions he had performed well, Defendant refused because it does not offer accommodations.

23. Defendant's explanation for failing to provide accommodations to disabled employees is facially discriminatory: Defendant does not want to switch employee assignments because other employees will see this and complain and want an accommodation.

24. Upon information and belief, Defendant's employees were not trained on the ADA's requirements.

25. In light of Plaintiff's ability to perform other positions, his struggles to perform the position that was forced upon him, and his requests that he could not keep up and to be placed back at position(s) he had performed well before, Defendant did not even discuss this availability with Plaintiff.

26. Instead, Defendant abruptly terminated Plaintiff based on his performance at this specific new machine.

27. Plaintiff was told that because he cannot perform this specific machine, Defendant would not keep him employed.

28. Because Defendant lacks ADA policies and procedures—and in turn employee training regarding the same—maintains a facial policy of "no accommodations", and failed to engage in any interactive process that would have determined Plaintiff's abilities, Defendant violated the ADA in terminating Plaintiff.

29. This is corroborated by the EEOC's determination that Defendant failed to provide Plaintiff a reasonable accommodation, failed to engage in any interactive process, and terminated Plaintiff based on his disability.

## COUNT I
## VIOLATION OF 42 U.S.C § 12101, *et seq.*, OF THE AMERICANS WITH DISABILITIES ACT—DISCRIMINATION AND/OR FAILURE TO ACCOMMODATE

30. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 29, as if fully set forth herein.

31. Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, prohibits discrimination against any qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

32. 42 U.S.C. § 12111(8) defines qualified individual to mean an individual who with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires.

33. At all relevant times, Plaintiff, who is missing his left arm from the elbow down, is a qualified individual within the meaning of 42 U.S.C. § 12111(8).

34. Plaintiff could perform his job duties with, or without, a reasonable accommodation.

35. 42 U.S.C. § 12112(b) defines discrimination against a qualified individual on the basis of disability. The definition of discrimination includes the failure to reasonably accommodate a disabled individual. It includes the following:

    a. 42 U.S.C. § 12112(b)(3) includes in the definition of discrimination utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability.

    b. 42 U.S.C. § 12112(b)(5) includes in the definition of discrimination the failure to reasonably accommodate a qualified individual with a disability.

    c. 42 U.S.C. § 12112(b)(6) includes in the definition of discrimination the use of qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual

with a disability or a class of individuals with a disability unless it is shown to be job related for the position in question and consistent with business necessity.

36. A reasonable accommodation under the ADA includes "job restructuring…reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations[.]" 42 U.S.C. § 12111(9).

37. The ADA also requires an individualized inquiry into each individual employee's specific situation and need for an accommodation and accommodating such a request unless the request poses an undue hardship.

38. To determine the reasonableness of an accommodation, the ADA's regulations indicate that "it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

39. Defendant violated the ADA when it discriminated against Plaintiff based on his disability and request for accommodation by failing to accommodate Plaintiff and allowing him to work job(s) that he originally worked and were available.

40. Defendant discriminated against Plaintiff by enforcing its facially discriminatory policies regarding requested accommodations and denying Plaintiff an accommodation lacking either a sufficient reason or engaging in any interactive process.

41. By ignoring ongoing discrimination and enforcing discriminatory policies against Plaintiff, Defendant disregarded Plaintiff's basic rights under the Americans with Disabilities Act.

42. Defendant's actions and policies in discriminating against Plaintiff based on his disability and failing to accommodate Plaintiff were conducted with malice or reckless indifference to Plaintiff's federally protected rights.

43. Given Defendant's basis for terminating Plaintiff, Plaintiff has direct evidence of discrimination.

44. Instead of considering accommodating Plaintiff by engaging in an interactive process to determine what job(s) Plaintiff could perform, Defendant abruptly terminated Plaintiff.

45. As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

46. Pursuant to the ADA, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff Jimmie Shannon respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, for compensatory damages in whatever amount he is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, punitive damages, and an award of his fair and reasonable attorney fees, cost of litigation, and interest.

### COUNT II
### VIOLATION OF M.C.L. § 37.1101, *et seq.*, THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — DISCRIMINATION AND FAILURE TO ACCOMMODATE

47. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 46, as if fully set forth herein.

48. The Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.*, ("PWDCRA") prohibits the discharge or otherwise discrimination against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

49. The PWDCRA also requires an employer to "accommodate a person with a disability for purposes of employment … unless the person demonstrates that the accommodation would impose an undue hardship." M.C.L. § 37.1102.

50. A disability is "[a] determinable physical or mental characteristic of an individual which may result from disease, injury, congenital conditions of birth, or functional disorder, if the characteristic ... substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion." M.C.L. § 37.1103(d)(i)(A).

51. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the PWDCRA. Specifically, Plaintiff has a physical impairment—his amputated arm—that substantially limits one or more of his major life activities.

52. Plaintiff was qualified for the position he was hired for and held and could perform the essential job duties of Machine Operator with or without a reasonable accommodation.

53. Plaintiff requested a reasonable accommodation and was denied that request and/or that request was disregarded by Defendant.

54. Defendant violated the PWDCRA when it discriminated against Plaintiff on the basis of his disability by failing to accommodate his reasonable requests for an accommodation and by terminating him.

55. Defendant treated Plaintiff, because of his disability, more harshly than it treated other similarly-situated employees and upon information and belief, this was at least in part motivated by discrimination.

56. Defendant's actions were intentional and in disregard of Plaintiff's rights and sensibilities.

57. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

58. Defendant did not engage in any interactive process to attempt to accommodate Plaintiff, but instead disregarded Plaintiff's request(s) for an accommodation.

59. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the PWDCRA.

60. As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of

employee benefits, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

61.	Pursuant to the PWDCRA, Defendants are liable to Plaintiff for all damages allowed under state law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00, plus costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

                THE RASOR LAW FIRM, PLLC

                */s/ Andrew J. Laurila*
                ANDREW J. LAURILA (P78880)
                Attorney for Plaintiff
                201 E. 4th Street
                Royal Oak, MI 48067

Dated: November 11, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE SHANNON,

    Plaintiff,

v

MARADA INDUSTRIES, INC.,
d/b/a/ COSMA BODY ASSEMBLY
MICHIGAN,

    Defendant.

Civil Action No.:
Honorable

---

JAMES B. RASOR  (P43476)
ANDREW J. LAURILA (P78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax

_____

### RELIANCE ON JURY DEMAND

    NOW COMES Plaintiff, JIMMIE SHANNON, by and through his attorneys, Rasor Law Firm, PLLC, by ANDREW J. LAURILA, and hereby demands a trial by jury in the above-captioned cause of action.

               THE RASOR LAW FIRM, PLLC

               */s/ Andrew J. Laurila*
               ANDREW J. LAURILA (P78880)
               Attorney for Plaintiff
               201 E. 4th Street
               Royal Oak, MI 48067

Dated: November 11, 2020